UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **MAG. NO. 25-MJ-209** |
| v. | |
| **OSMAN MOHAMED,** | |
| Defendant. | |

**MOTION FOR EMERGENCY STAY AND FOR**
**REVIEW AND APPEAL OF RELEASE ORDER**

COMES NOW, the United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, and respectfully moves this Court, first, to stay Defendant Osman Mohamed's release pending trial, and second, to hear an appeal to review and overturn the Magistrate Judge's denial of the Government's motion for pretrial detention. In support whereof, we submit as follows:

**BACKGROUND**

The defendant was charged on September 6, 2025, by complaint with Unlawful Possession of a Firearm by a Person Previously Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), and Unlawful Possession with Intent to Distribute Oxycodone and Marijuana, in violation of 21 U.S.C. § 841(a)(1). At presentment, the government moved for detention pending trial under 18 U.S.C. §§ 3142(f)(1)(C),(E). Additionally, the government filed a memorandum in support of pretrial detention. ECF No. 6.

On September 16, 2025, a detention hearing was held. During the hearing, the government argued that based on the § 3142(g), the defendant could not overcome the presumptions that no

combination of conditions could assure the safety of the community. Magistrate Judge Matthew Sharbaugh disagreed. He held that Mr. Mohamed had overcome the presumption and released Mr. Mohamed on conditions, most notably GPS monitoring with a curfew. Judge Sharbaugh agreed to stay the release order until 10:00 a.m. on September 17, 2025, pending action of this Court.

The government now requests review of Magistrate Judge Sharbaugh's detention determination by this Court.

## FACTS OF THE CASE

### *The September 5, 2025 Arrest*

On September 5, 2025, at approximately 8:40 p.m., members of the Metropolitan Police Department (MPD) joined by agents from the Drug Enforcement Agency and the United States Marshals Service were patrolling in the NoMa area in a marked police vehicle. As they drove down the unit block of Patterson Street NE, they observed a silver BMW that was occupied, running and illegally parked. Specifically, the vehicle was parked directly in front of an "Emergency No Parking" sign that had the dates of 09/05/2025 to 09/09/2025 restricted and the hours restricted being "24 Hours."

The officers stopped the vehicle to make contact with the sole occupant and driver of the silver BMW, who would later be identified as Mr. Mohamed. As they stopped the car, the officers could see white smoke billowing from within the cabin of the vehicle, as the interior light was illuminated. The officers and agents exited their vehicles and could smell the odor of burnt marijuana. As the officers exited their vehicle, so did Mr. Mohamed, closing the driver's door behind him.

Officer Orr opened the driver's door and observed, in plain view, an orange tinted bottle that is consistent with Promethazine. At further inspection, Officer Orr saw that the label of the

Promethazine had been tampered with, and the bottle was approximately ¼ filled (4oz in weight) with a dark in color liquid. With the rear label being observed as clearly tampered with, officers observed the following warnings label, "CAUTION: Opioid. Risk of overdose with addiction," as is consistent when Promethazine is mixed with Codeine.



Officer Orr also observed a white hand-rolled blunt with a charred tip, located in a cup next to where Mr. Mohamed was seated in the vehicle.



A further search of the vehicle revealed the following items:

- White hand-rolled blunt with a charred tip (located in a cup next to where Defendant Mohamed was seated inside the vehicle).

- Orange prescription bottle with tampered label that consisted of 119 pink / round pills stamped "K 56" (located in the center console of the vehicle).
- Black scale with green-leafy residue (located in the center console of the vehicle).
- Six (6) THC Pens (located in black satchel on driver side floorboard).
- One (1) THC Vape (located in black satchel on driver side floorboard).
- US Currency totaling $1,402.45 (located in black satchel on driver side floorboard).
    - Four (4) $100 bills
    - Fourteen (14) $50 bills
    - Fifteen (15) $20 bills
    - Two (2) $1 bills
    - One (1) 25¢
    - Four (4) 10¢
- Five (5) Mylar bags containing green-leafy substance consistent in appearance with marijuana weighing approximately 91.35g (located in a black backpack in the trunk of the vehicle).
- Three (3) multi-colored Mylar bags containing green-leafy substance consistent in appearance with marijuana weighing approximately 55.86g (located in a black backpack in the trunk of the vehicle).
- Two (2) large Mylar bags containing green-leafy substance consistent in appearance with marijuana weighing 95.22g (located in a black backpack in the trunk of the vehicle).
- One (1) canned Mylar containing green-leafy substance consistent in appearance with marijuana weighing 57.22g (located in a black backpack in the trunk of the vehicle).

In total, officers recovered approximately of 299.96g or 10.6oz of green-leafy substance.

An MPD officer tested a portion of the substance which yielded a positive color reaction to a marijuana-based product. Furthermore, a query from Drugs.com revealed that the pink round pills stamped K56 are consistent with Oxycodone Hydrochloride 10mg. Oxycodone is a Schedule II narcotic controlled substance that requires a valid prescription, meaning it has high potential for abuse.



Finally, officers also located a Smith & Wesson M&P 40 Shield .40 caliber handgun underneath the floor mat on the right rear passenger side of the vehicle. The recovered firearm has a serial number of JCN4190. At the time of the recovery, the firearm had one (1) live round of ammunition in the chamber and six (6) rounds of live ammunition inside the magazine that had a capacity for seven (7) rounds.

A law enforcement query revealed that the silver BMW was registered to Mr. Mohamed.

## LEGAL AUTHORITY AND ARGUMENT

*The Authority to Grant the Motion to Stay Release Pending Appeal*

The power to stay an order of release is directly related to a district court's authority to review a release order of a magistrate judge. *See, e.g.*, *United States v. Brigham*, 569 F.3d 220, 230 (5th Cir. 2009) ("given that the issue being reviewed involves a person's release from custody pending further legal proceedings, the absence of stay authority could render the district court's review power illusory."). An alternative interpretation would risk allowing the charged defendant the opportunity to "harm[] the community or disappear[] by the time the district court's ruling is rendered and detention is ordered" if the district court determines to order the defendant detained.

*Id.*; *see also United States v. Salazar-Andujo*, 599 F. Supp. 3d 491, 494 (W.D. Tex. 2022); *United States v. Rosales-Villegas*, No.: 2:23-cr-00044-GMN-VCF, 2023 U.S. Dist. LEXIS 59776, at *5-6, 7 n.1 (D. Nev. Apr. 4, 2023) ("The Court's decision is also based on unanimous caselaw. As the Government notes, "stays of release are so commonplace and uncontroversial that they are often relegated to a sentence or two in the procedural history of an opinion on the merits of the detention decision." (Resp. 3:9-24) (collecting cases). Here, the Court is guided by the practical considerations underlying the issuance of a stay as well as caselaw within the Ninth Circuit routinely authorizing stays.")).

The government is aware of Judge Faruqui's recent decision denying a motion to stay in *United States v. Abass*, 25-CR-00079 (TSC), ECF No. 12 (April 11, 2025). Judge Faruqui indicated that although magistrate courts typically suspend an order of release pending the government's appeal, that the Court would no longer do so under the four factors articulated in *Nken v. Holder*, 556 U.S. 418 (2009). The government, however, is not seeking an extraordinary length of time in which to have the Court consider the merits of a stay which will require significant, detailed briefing, but rather, an emergency stay in order to present the merits of the requested detention to the district court judge.

Thus, the government seeks a brief administrative stay of the order of release, and as such, the request should not be analyzed under the *Nken* factors. As this Circuit has noted, "[t]he purpose of [this] administrative stay is to give the court sufficient opportunity to consider the merits of the motion for a stay pending appeal." *Cobell v. Norton*, No. 03-5262, 2004 WL 603456, at *1 (D.C. Cir. Mar. 24, 2004). Such a stay, as the Supreme Court noted recently in *United States v. Texas*, 144 S. Ct. 797, 798 (2024), "buys the court time to deliberate" and does not "typically reflect the court's consideration of the merits." *Id.* at 798 (Barret, J., concurring). District courts have

recognized that administrative stays are also applicable in seeking emergency relief, including in the District of Columbia. *See, e.g.*, *Dellinger v. Bessent*, 2025 WL 450488 (D.D.C. Feb. 10, 2025); *National Council of Nonprofits v. Office of Management & Budget*, 2025 WL 314433 (D.D.C. Jan. 28, 2025); *Order, Texas v. Department of Homeland Security*, No. 24-CV-306 (E.D. Tex. Aug. 26, 2024). As these courts have recognized, the "[t]he authority for an administrative stay arises from the All Writs Act and a court's inherent authority to manage its docket." *Dellinger*, 2025 WL 450488 (quoting *Order, Texas,* No. 24-CV-306, at 2).

<u>De Novo Review of the Magistrate's Release Order</u>

Title 18, U.S.C. § 3145(a) states:

> **(a) Review of a release order –** If a person is ordered released by a magistrate, . . .
>
> > **(1)** the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the Government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pretrial detention. Although the D.C. Circuit "ha[s] not squarely decided the issue," *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021), every other circuit to have analyzed the issue has concluded the standard is *de novo*. *See United States v. Blackson*, No. 23-cr-25 (BAH), 2023 U.S. Dist. LEXIS 18988, at *15 n.2 (D.D.C. Feb. 6, 2023) (collecting Court of Appeals cases from the First, Second, Third, Fourth, Fifth, Eighth, Ninth, and Tenth Circuits that support this proposition).

In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional

evidence from new witnesses or consider arguments not raised previously. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.

I. **The 3142(g) Factors Support Detention**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). The Act provides, however, for certain crimes, that there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community. *See id.*

The crimes triggering such rebuttable presumptions need not be expressly included in the charging instrument. *See United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (holding that "the complaint need not allege a violation of one of the particular predicate offenses for the presumption to come into play.") Instead, "[if] the facts establish probable cause that the defendant has [committed such an offense], the judicial officer should give proper weight to Congress's general factual view that the defendant poses an unreasonable risk of danger to the community when applying the § 3142(g) factors." *Id.*

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the

defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

Two rebuttable presumptions apply here. Specifically, there is probable cause to believe that Mr. Mohamed committed a violation of an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act and that he committed an offense under 18 U.S.C. § 924(c). *See* 18 U.S.C. § 3142(e)(3)(A), (B). A review of the 3142(g) factors only confirms the presumption that Mr. Mohamed should be detained pending trial.

### A. The Nature and Circumstances of this Offense Merits Detention.

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention.

Mr. Mohamed is currently charged with a serious offense carrying significant penalties. For violating 18 U.S.C. § 922(g), Mr. Mohamed faces a maximum sentence of up to fifteen years'

imprisonment, and for violating 21 U.S.C. § 841(a)(1), he faces a maximum sentence of up to twenty years' imprisonment. Furthermore, the government will likely seek indictment of an additional charge for Carrying a Firearm in furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). For that charge he will face a mandatory minimum sentence of 5 years' imprisonment, and a maximum of life imprisonment.

While these offenses are possessory offenses, this Court has warned against discounting the inherent danger associated with loaded firearms. "Illegally possessing a fully loaded concealed firearm with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community." *United States v. Blackson*, 2023 WL 1778194, at *7. This Court routinely finds that just one such gun poses a danger to the community. *See United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public). Furthermore, the firearm with which Mr. Mohamed is charged was loaded with a round in the chamber and had an extended magazine. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling.")

Moreover, Mr. Mohamed did not just possess a handgun in isolation, he did so while apparently engaged in the distribution of narcotics. The amounts of controlled substances, the presence of a scale, the way the controlled substances were packaged, and the large amount of cash present are all indicative of distribution. This Court has repeatedly recognized the dangerousness associated with carrying a firearm in connection with drug distribution. *See, e.g., United States v. Carr*, 2022 WL 13947798 (D.D.C.), 4 (slip copy) (finding the first factor weighed

in favor of detention given "the combination of drug distribution *and* the illegal possession of (multiple) guns presents a serious danger to the community."); *United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018) ("[A]lthough the mere fact that the defendant possessed a firearm does not constitute evidence of a danger to the community, possession of a firearm by a convicted felon who is allegedly engaged in illegal drug distribution is a different matter.")

The nature and circumstances of Mr. Mohamed's offenses weigh heavily in favor of detention.

**B. The Weight of the Evidence Against the Defendant is Formidable.**

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[1] The Government's case against Mr. Mohamed is strong.

From front to back, the silver BMW, which is registered to Mr. Mohamed and of which Mr. Mohamed was the sole occupant, was filled with controlled substances. In fact, many of the controlled substances and associated items were within an arms-reach of where Mr. Mohamed was sitting when he was observed by Officer Orr. The pills and scale were in the center console, six THC pens and a vape were on the driver side floorboard, and a bag with more than $1,400 cash was also located in a satchel on the driver side floorboard. Moreover, the firearm's placement

---

[1] This factor should be equally weighed. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194 at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

underneath the floor mat on the right rear passenger side of the vehicle creates the possibility that it was placed there by Mr. Mohamed upon seeing the officers approach.

This factor favors detention.

### C. The Defendant's History and Characteristics Merit Detention.

The third factor, Mr. Mohamed's history and characteristics, likewise favors detention.

Mr. Mohamed has a history of controlled substances offenses, with three convictions involving controlled substances. But what should give the Court the greatest concern is Mr. Mohamed's prior performance under court-ordered supervision. The Pretrial Services Report identifies at least three prior revocations of probation. The Pretrial Services Report indicates that Mr. Mohamed incurred multiple probation violations in CR16001584 before his probation was eventually revoked. In fact, the pretrial services report does not identify a single instance where Mr. Mohamed successfully completed a court-ordered period of supervision.

As such, this history should give the Court little confidence that Mr. Mohamed could abide by any combination of conditions.

### D. Mr. Mohamed Presents a Danger to Our Community.

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, further weighs in favor of the government's request. This case suggests that the defendant is someone who deals drugs and possesses firearms. Mr. Mohamed's criminal history also suggests that he is undeterred by supervision.

Furthermore, the charge in this case gives rise to multiple presumptions that there is no combination of conditions that can assure the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (establishing that the indictment alone triggers the rebuttable presumption). These rebuttable presumptions underscores

that Congress sought to treat such crimes extremely seriously, particularly in light of the mandatory-minimum terms of incarceration accompanying such transgressions. Under the Bail Reform Act, 18 U.S.C. §§ 3142 et seq., "[t]he statutory language, as well as the legislative history, unequivocably establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3rd Cir. 1985). Its legislative history also "fully supports the conclusion that Congress intended to equate drug trafficking with danger to the community." *Id.*, 775 F.2d at 507. As noted by the D.C. Circuit:

> The legislative history indicates that the rebuttable presumption covering serious drug trafficking offenses was included because: 'Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism. Furthermore, the Committee received testimony that flight to avoid prosecution is particularly high among persons charged with major drug offenses. Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and the foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences.'

*United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203). Thus, in creating a presumption of pretrial detention for serious drug trafficking offenses, both the legislative history and the statutory language make clear that very "real-world" concerns lie behind the recognition of the inherent, pretrial dangers and flight risks posed by those who commit serious drug trafficking offenses, especially while in possession of firearms.

Moreover, these presumptions shift the burden of production appropriately to the defense to rebut the presumption itself. *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of

persuasion remains on the government and the rebutted presumption retains evidentiary weight" (citations omitted)). Here, the defendant's past defiance of supervision demonstrates that this presumption cannot be overcome. For these reasons, the government submits that the Court should order Mr. Mohamed's detention during the pendency of this case to protect the community.

II.     **The Conditions Fashioned by Judge Sharbaugh do not Adequately Protect the Community**

Judge Sharbaugh ultimately found that he could fashion release conditions that adequately protected the community. Specifically, Judge Sharbaugh imposed a curfew of 10:00 p.m. to 6:00 a.m. with GPS monitoring and a travel restriction within 50 miles of his mother's residence in Arlington, Virginia. However, the government notes that Mr. Mohamed was arrested before 10:00 p.m. with a significant amount of controlled substances and a firearm within 50 miles of Arlington, Virginia. In short, these conditions do little to impede Mr. Mohamed from distributing controlled substances or possessing firearms from 6:00 a.m. to 10:00 p.m. While Mr. Mohamed was also ordered to not possess firearms or controlled substances, his repeated failure under court supervision should give the Court little faith that he will follow his ordered release conditions.

## CONCLUSION

The government submits that the release conditions as ordered by U.S. Magistrate Judge Sharbaugh will not adequately protect the community, particularly given his history of flouting supervision. The government submits, in light of the factors contained herein, Mr. Mohamed should not be released, and the government requests that Judge Sharbaugh's release order be stayed pending decision by this Court.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

/s/ Joshua Gold
Joshua Gold
DC Bar No. 90033536
Assistant United States Attorney
601 D Street, N.W.
Washington, DC 20579
Phone:  (202) 815-8965
Email:  Joshua.Gold@usdoj.gov